Cecelia A. SHAHEEN,
Plaintiff–Appellant,

v.

The B.F. GOODRICH CO.,
Defendant–Appellee.

No. 88–3534.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 13, 1989.

Decided Feb. 21, 1989.

William R. Holland (argued), Akron, Ohio, for Cecelia A. Shaheen, plaintiff-appellant.

Norman S. Carr, Gary W. Spring (argued), and Roetzel & Andress, Akron, Ohio, for BF Goodrich Co. and Uniroyal–Goodrich Tire Co., defendants-appellees.

Before KENNEDY and JONES, Circuit Judges, and SILER, Chief District Judge.*

PER CURIAM.

Plaintiff, Cecelia A. Shaheen, appeals the District Court's grant of summary judgment in favor of defendant-appellee, the B.F. Goodrich Company, in plaintiff's employment discrimination suit. The District Court found plaintiff's claims under the ADEA, an Ohio statute barring Age Discrimination, the Equal Pay Act, Title VII, and 42 U.S.C. § 1981 barred by a release signed by plaintiff shortly after she left Goodrich's employ. Her claims under ERISA remain. Plaintiff maintains that waivers of employment-related discrimination claims are void as against public policy. She further asserts that the District Court erred in rendering judgment for Goodrich because a genuine issue of material fact remained as to the existence of consideration to support the release. We agree with the District Court that Goodrich was entitled to judgment as a matter of law. Accordingly, we affirm.

Plaintiff was a Goodrich employee from 1950 until 1985, when Goodrich terminated her as part of a reduction in force. Prior to plaintiff's termination, Goodrich informed plaintiff that as an employee eliminated pursuant to a reduction in force, she had the option of choosing between two severance pay plans: the Special Separation Supplement (SSS) or the Employee Assistance Program (EAP). Among other conditions, the SSS plan provided for a payment calculated according to the employee's length of service and salary, and required the employee to sign a release of all civil claims regarding the termination except those claims relating to unemployment, workers compensation and ERISA. The EAP allowed an employee to remain on Goodrich's salary rolls for several months while Goodrich provided assistance in helping the employee locate another position within the company. The EAP had no waiver requirement. Each of these severance plan options were offered in addition to pension benefits.

Initially, plaintiff had difficulty deciding which severance option she would choose. Goodrich gave plaintiff three months to make a decision, during which time plaintiff was enrolled in the EAP. In November of 1985, plaintiff selected the SSS option. Before signing a release of her rights, plaintiff consulted with an attorney as to whether she should accept the SSS option in exchange for a waiver of her rights. On November 27, 1985, plaintiff chose to sign a waiver and accordingly received her SSS payment of approximately $22,000.00 on that date.[1] In addition to its SSS payment, Goodrich paid plaintiff approximately $42,000.00 under the Goodrich pension plan in a lump sum pursuant to plaintiff's pension payment election.

Plaintiff subsequently filed a discrimination suit in the District Court. Goodrich contended that it was entitled to the judgment because plaintiff signed the SSS release agreeing to forego recourse to civil actions. Plaintiff attempted to avoid the effect of the release by arguing that the release was void because it lacked consider-

---

* The Honorable Eugene E. Siler, Jr., Chief U.S. District Judge for the Eastern District of Kentucky, sitting by designation.

1. Plaintiff signed an agreement which included the following waiver provision:

   The parties hereto specifically agree that this Agreement and Release is a contract. The parties hereto further expressly state that it is their intention to completely and forever resolve differences between them, and that neither party will after signing this, pursue or file any charge or lawsuit regarding or relating to the termination of employee's employment. In this regard, the employee realizes should he/she file, initiate, or persuade an-

other to file, initiate, or in any other manner pursue or encourage any charge, lawsuit, or other legal proceedings regarding his/her termination of employment (excepting unemployment or workers' compensation) that such filing, initiating, or other pursuing constitutes a breach of this Agreement, and that he/she will be liable for damages for the breach of this contract occurring to the Company as a result of the employee's breach. However, nothing in this release and agreement shall preclude the ability of the employee from pursuing any claims related to Worker's Compensation or under ERISA, including the method of calculation of her pension.

ation and was against public policy. The District Court granted Goodrich's motion for summary judgment finding no bar to a release of this kind, and finding no lack of consideration because plaintiff accepted the SSS payment in exchange for her execution of the release. Plaintiff appealed.

■ Plaintiff first claims that the District Court erred in granting summary judgment for Goodrich because the release is invalid as against public policy. According to plaintiff, enforcement of such waivers will impermissibly infringe upon the ability of individuals to cooperate with governmental agencies in "enforcement of antidiscrimination and civil rights employment laws." We disagree.

■ Ordinarily, public policy does not prohibit an otherwise valid release from acting as a waiver of a federal statutory cause of action. *See, e.g., Rogers v. General Elec. Co.*, 781 F.2d 452, 454 (5th Cir. 1986). Accordingly, waivers of federal statutory rights have been upheld in numerous contexts. *See, e.g., Town of Newton v. Rumery*, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987) (section 1983 claim); *EEOC v. Cosmair, Inc.*, 821 F.2d 1085, 1091 (5th Cir.1987) (Title VII claim); *Runyan v. National Cash Register Corp.*, 787 F.2d 1039, 1045 (6th Cir.), *cert. denied*, 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986) (ADEA claim). In fact, public policy weighs in favor of allowing voluntary settlement of Title VII disputes and releases of private rights under the ADEA. *See, e.g., Rogers*, 781 F.2d at 454; *Runyan*, 787 F.2d at 1045. If " 'overreaching or exploitation is not inherent in the situation,' " *Runyan*, 787 F.2d at 1045 (quoting *Schulte, Inc. v. Gangi*, 328 U.S. 108, 121–22, 66 S.Ct. 925, 931–32, 90 L.Ed. 1114 (1946) (Frankfurter, J., dissenting)), we will examine waivers of employee rights under normal contract principles. Properly executed waivers of possible employment-related discrimination claims knowingly and voluntarily made between an employee and

his employer will be enforced absent the typical exceptions for fraud, duress, lack of consideration or mutual mistake.

■ In the case at bar, plaintiff executed a valid waiver both knowingly and intelligently. Plaintiff was given three months to make her decision and during that time she consulted with an attorney. Plaintiff does not contend that fraud, duress, or mutual mistake surrounded the execution of the waiver and presents no evidence demonstrating that her actions were less than voluntary. We find no public policy reason to deny enforcement of the release in this instance.[2]

■ Plaintiff's second argument is that the release was not supported by consideration. Her argument runs as follows. Through its misleading employee handbooks concerning employee rights under the Goodrich pension fund, Goodrich somehow created a vested right that plaintiff receive both a pension and Separation Pay. In exchange for her release, plaintiff allegedly received the equivalent of the Separation Pay to which she was already entitled by virtue of Goodrich's misleading handbooks. Therefore, no consideration supports the release because plaintiff received from Goodrich no more than an amount of money to which she already had a right. Plaintiff proceeds to detail exactly which handbooks created her right to receive both a pension and Separation Pay, and why her reliance on these publications was reasonable. We agree with the District Court that plaintiff's argument misses the point.

Undisputed record evidence demonstrates that Goodrich informed plaintiff that payments received under the SSS option were contingent upon a release of rights and that her receipt of pension benefits was a completely separate issue. Furthermore, on several occasions a Goodrich employee in charge of the EAP and SSS programs discussed the options with plaintiff and her attorney and "made [it] clear to her that in order to obtain the SSS pay-

**2.** We express no opinion on the propriety of blanket waivers of *all* claims of discrimination whatever their nature. We simply find on the facts of this case that plaintiff's waiver of her

rights to bring suit regarding her *termination* does not violate public policy when applied to causes of action under the ADEA, the EPA, Title VII and section 1981.

ments that she must completely release all claims against [Goodrich]." Plaintiff's belated assertion that she should have received additional pension payments because of misleading employee handbooks concerning Separation Pay goes to the inadequacy of pension benefits, and does not call into question the existence of consideration to support her waiver. The $22,000.00 in payments plaintiff received pursuant to her SSS election came from non-pension funds. Assuming, arguendo, Goodrich improperly denied plaintiff her right to additional pension payments upon termination as defined in earlier employee handbooks, plaintiff's failure to receive that money has no bearing upon the validity of her release under the SSS.

Plaintiff received approximately $22,000.00 in exchange for her execution of a release in connection with her choice of the SSS option. This exchange is distinct from any rights plaintiff may have in additional pension moneys. Plaintiff's assertions of improper payment under the Goodrich pension plan can be resolved under her ERISA cause of action that remains before the trial court. Even if plaintiff should have some claim under ERISA, the release bars her discrimination claims.

AFFIRMED.