Wade BROWN, Plaintiff,

v.

B AND D PLASTICS, INC., Defendant.

Civ. A. No. 93-D-438-N.

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 30, 1994.

Johnny Hardwick, Montgomery, AL, for plaintiff.

Kenneth Wood Cox, Jr., Troy, AL, Leslie McCafferty Allen, Donald R. Jones, Jr., Montgomery, AL, for defendant.

## MEMORANDUM OPINION

De MENT, District Judge.

The above-styled action is before the court on Defendant B & D Plastics Inc.'s motion for summary judgment, filed January 3, 1994. Defendant filed a brief contemporaneously in support of its motion. Also, before the court is Plaintiff Wade Brown's motion for summary judgment which was filed on February 3, 1994, for which a supporting brief was also filed.

For the reasons explained below, Defendant's motion for summary judgment is due to be granted in part and denied in part. Plaintiff's motion for summary judgment is due to be denied.

## JURISDICTION & VENUE

This court may assert subject matter jurisdiction in this cause as Plaintiff alleges that Defendant violated 42 U.S.C. 2000e *et seq.* (hereinafter "Title VII").[1] Pursuant to 28 U.S.C. § 1331, "[t]he district courts have original jurisdiction of all civil actions arising under .... the laws .... of the United States." Plaintiff also alleges that Defendant discharged him in retaliation for filing a workers' compensation claim in violation of § 25-5-11.1 *Alabama Code* (1975). Pursuant to 28 U.S.C. § 1367, this court may properly assert pendent jurisdiction over Plaintiff's state law claim. Personal jurisdiction and venue are not contested.

### Facts/Contentions

Plaintiff, Wade Brown (hereinafter "Brown"), began working for the defendant, B & D Plastics, Inc. (hereinafter "B & D"), on September 19, 1985. B & D initially hired Brown as a janitor. While serving as janitor, Brown claims that he also ran errands for Defendant. Plaintiff contends that after approximately one and one half years in Defendant's employ, he was promoted to forklift operator. As forklift operator, Plaintiff states that his duties consisted of transporting various heavy materials.

Brown asserts that he worked as a machine operator on Defendant's production line for about four (4) months.[2] While on the assembly line, Plaintiff alleges that he packed and stocked products for use on the assembly line and made minor repairs to malfunctioning machines. Brown contends that after serving as a machine operator for four months, he regained his forklift operator position.

Following Brown's second tenure as forklift operator, he was promoted to corrugated warehouse manager, where he inventoried, loaded and unloaded materials to satisfy production demands in Defendant's plant. Plaintiff claims that he sometimes served as a part-time truck driver for B & D during his tenure as corrugated warehouse manager.

On or about June 27, 1991, Plaintiff suffered an injury while acting within the line and scope of his employment which rendered him unable to perform his designated duties as corrugated warehouse manager. Following this injury, the company physician, Dr. Griffin, treated Brown and, according to Defendant, restricted Plaintiff to light duty jobs. Defendant contends that, in accordance with Dr. Griffin's recommendation(s), it attempted to accommodate Plaintiff by placing him in a receptionist position. Wayne Langston (hereinafter "Langston"), Brown's supervisor, stated that after a few weeks as a receptionist, Plaintiff claimed that

---

1. Plaintiff has exhausted his administrative remedies as he has received a Right to Sue Letter from the Equal Employment Opportunity Commission. Furthermore, following receipt of his Right to Sue Letter, Plaintiff timely filed the action presently before the court.

2. Brown does not articulate how long he served as a forklift operator before assuming the machine operator position.

he could not continue in that capacity because sitting for prolonged periods aggravated the side effects of his injury. B & D alleges that the receptionist position was the only light duty post available at the time Dr. Griffin placed Plaintiff on restricted duty. B & D further asserts, and Brown does not deny, that Plaintiff began to collect workers compensation benefits soon after his injury.[3]

B & D asserts that subsequent to Plaintiff's injury, Plaintiff began daily therapy sessions with Dr. Griffin. According to Langston, Dr. Griffin released Brown to return work without restrictions on August 26, 1991, but Brown's former position had been abolished during Brown's absence due to a reduction in force. When Plaintiff returned to B & D seeking reemployment, Langston told Plaintiff that he was "laid-off indefinitely".

Plaintiff subsequently filed a workers compensation action in the Circuit Court of Montgomery County, Alabama. On November 22, 1991, the parties executed a settlement agreement (hereinafter the "Agreement") regarding Brown's workers compensation action. According to the Agreement, the parties agreed:

> "to compromise this dispute by agreeing to rendition by the Court pursuant to § 25–5–56, Code of Alabama (1975) of a judgment in favor of the Plaintiff and against the Defendant in the amount of Five Thousand Two Hundred Fifty and No/100 ($5,250.00) Dollars, which includes all compensation due to Plaintiff. In consideration of the Plaintiff agreeing to the rendition of said judgment.... it is expressly agreed that Defendant.... is hereby released and forever discharged from any and all claims on account of said injury. .... This settlement contains a full agreement between the parties as to the Workmen's Compensation benefits."

Parties' Petition for Settlement Agreement, at p. 2.

On or about December 13, 1994, Brown informed B & D that his treating physician, Dr. Moore, had released him to return to work. Defendant asserts that it reiterated to Plaintiff that his former position, corrugated

warehouse manager, had been abolished due to market dynamics and that Plaintiff remained laid-off. Langston states that Brown had no further contact with B & D and never applied for or sought another position with B & D.

Brown filed a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter the "EEOC") on January 8, 1992, alleging that by refusing to allow Plaintiff to return to work B & D discriminated against Plaintiff on the bases of race and sex. In essence, Plaintiff alleges that whites and females were reassigned to positions, after being laid-off, for which Plaintiff possessed the necessary qualifications. Plaintiff received a Right to Sue Letter from the EEOC on January 7, 1993, and filed the above-styled action in this court on April 6, 1993. Plaintiff brings this action under Title VII, alleging race and sex discrimination and under § 25–5–11.1 *Alabama Code* (1975), alleging retaliatory discharge.

On April 29, 1993, Defendant filed a Motion to Dismiss in conjunction with its Answer. Defendant contends that Plaintiff's claims are barred by the doctrine of *res judicata*. Defendant claims that the November 22, 1991, Release/Settlement Agreement between it and Plaintiff bars any action arising from the work related injury sustained by Plaintiff on or about June 27, 1991.

Defendant then moved for summary judgment on January 4, 1994. Essentially, Defendant articulates the same argument set forth in its April 29, 1993, Motion to Dismiss.

On February 3, 1994, Plaintiff filed a Motion for Summary Judgment. Brown contends that he is entitled to judgment as a matter of law because he has demonstrated a prima facie case of impermissible discrimination. Moreover, Plaintiff contends that Defendant's proffered legitimate nondiscriminatory explanation for not reassigning him is a mere pretext for invidious discrimination.

### Summary Judgment Standard

On a motion for summary judgment, the court is to construe the evidence and factual

---

**3.** Plaintiff contends that he filed for workers' compensation benefits on June 27, 1991, the date

on which Defendant claims that the Plaintiff was injured.

inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1607, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The trial court's function at this stage of the case is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

### Defendant's Motion for Summary Judgment

Basically, the defendant contends that the Agreement represented the extent of its liability to Brown for any action which could conceivably arise from the employment relationship between Brown and B & D, and, as a result thereof, Defendant is entitled to judgment as a matter of law. For reasons stated herein, this proposition is untenable and Defendant's Motion for Summary Judgment is due to be denied as it relates to Brown's Title VII claim. Moreover, the court finds that even if Defendant's position were sound, Plaintiff's Title VII action did not arise from the events giving rise to his workers compensation claim.

■ Title VII claims may be waived by agreement. *Torrez v. Public Health Service Company of New Mexico, Inc.,* 908 F.2d 687, 689 (10th Cir.1990); *Freeman v. Motor Convoy, Inc.,* 700 F.2d 1339, 1352–53 (11th Cir. 1983). However, the waiver of such claims must be knowing and voluntary. *See Shaheen v. B.F. Goodrich Co.,* 873 F.2d 105, 107 (6th Cir.1989) (waivers knowingly and voluntarily made are enforced absent fraud, duress, lack of consideration, or mutual mistake).

■ The dispositive issue is whether Plaintiff knowingly and volitionally waived his right to bring an employment discrimination action subsequent to signing the settlement agreement at issue. In *Seroka v. American Airlines, Inc.,* 834 F.Supp. 374, 375 (S.D.Ala.1993), the court found that the "Agreement and General Release" signed by the plaintiff-employee, Seroka, waived the right to bring an employment discrimination suit pursuant to Title VII and the Age Discrimination in Employment Act (hereinafter the "ADEA"). By signing the settlement agreement at issue in *Seroka,* the plaintiff expressly waived *all* claims:

> of any kind which may in any way arise out of [his] employment or the termination of [his] employment at American, including, but not limited to, any and all discrimination of any kind, including age discrimination, against American concerning events occurring at any time up to the date of this agreement.

*Seroka,* 834 F.Supp. at 375–76. The *Seroka* court also noted that the agreement at issue "specifically refers to claims under .... Title VII of the Civil Rights Act of 1964." 834 F.Supp. at 376.

Likewise, in *Shaheen,* the United States Sixth Circuit Court of Appeals focused on the clarity of the agreement at issue in determining that the employee-plaintiff waived her right to bring employment discrimination actions arising under (among other statutory provisions) the ADEA, Title VII and 42

U.S.C. § 1981. *Shaheen,* 873 F.2d at 106. In *Shaheen,* the plaintiff was given a choice of two severance pay plans when the defendant-employer instituted a reduction in force plan. The plaintiff-employee chose the more lucrative plan which required her to sign a release of *all* civil claims regarding the termination except those relating to unemployment, workers compensation and ERISA. *Id.*

The court is not convinced that the settlement/release agreement at issue in the case at bar provides that Plaintiff expressly waived his right to bring an employment discrimination action subsequent to signing the Agreement. The Agreement provides:

> ".... it is expressly agreed that Defendant shall be and is hereby released and forever discharged from any and all claims on account of said injury. This release agreement does not preclude future medical expenses which may be incurred."

The Agreement merely states that B & D is released from subsequent claims "on account of said injury." Thus, the relevant portions of the Agreement evinces nothing that compels a conclusion that Plaintiff cognizantly released all future claims grounded in federal anti-discrimination law. Furthermore, given the express language of the Agreement and logical inferences that may be reasonably drawn therefrom, the court finds that the Agreement pertains only to worker's compensation and claims related thereto.

B & D relies on and cites *Sanders v. Southern Risk Services,* 603 So.2d 994 (Ala. 1992) and *Ex parte Aratex Services, Inc.,* 622 So.2d 367 (Ala.1993) for the proposition that once an employee signs a general release agreement which has its genesis in the Alabama Workers' Compensation Act such agreement precludes any subsequent claim flowing from the employment relationship between the parties executing such agreement. The defendant construes *Sanders* and *Aratex* too broadly. *Aratex* merely held that "a wrongful discharge claim filed under § 25–5–11.1 was barred" by a previously-signed release agreement and the plaintiff could not later recover worker's compensation funds. *Aratex,* 622 So.2d at 369.

Implicitly, the *Aratex* court found that a retaliatory discharge claim, which was allegedly precipitated by the plaintiff filing a workers compensation claim, was barred after the plaintiff signed an agreement in settlement of the workers compensation claim at issue. The present action contains a retaliatory discharge claim, which is premised on Alabama law. In light of *Aratex,* the court finds that Plaintiff's retaliatory discharge claim is precluded by the Agreement.[4] However, this determination has no effect on the viability of Plaintiff's Title VII claim.

Moreover, *Aratex* involved a state court interpreting state law and the unresolved issue presents a question of federal law. B & D points this out in its motion for summary judgment and notes that this is the only distinction between the *Aratex* and *Sanders* cases and the case at bar. Although Defendant attempts to minimize this glaring distinction, the court deems this a key distinction. The two statutory provisions—Alabama Workers' Compensation Act and Title VII—were promulgated by their respective legislatures to remedy different ills. Therefore the court deems it unwise and imprudent to permit an agreement consummated in satisfaction of a workers' compensation claim to preclude vindication of a cognizable federal right or frustrate available federal remedies absent an express release of such rights.[5]

---

4. The court finds that general release agreements signed in settlement of workers' compensation claims preclude retaliatory discharge claims which are filed because of perceived backlash in reaction to filing a workers' compensation claim. The workers' compensation claim and the retaliatory discharge claim can be justifiably deemed to have arisen from the same injury because but for the workers' compensation claim, the retaliatory discharge claim would not have been filed.

5. The Civil Rights Act was promulgated to remedy workplace discrimination whereas the Alabama Workers' Compensation Act seeks to compensate employees who have been injured on their jobs. If the AWCA was enforced to preclude employment discrimination actions, employers engaging in workplace discrimination could readily circumvent Congress' ostensible intent of eradicating workplace discrimination and, in many instances, discriminate with impunity.

The defendant also cites the unpublished opinion of *Barney v. Clark Equipment Company,* No. K87–93CA9, 1989 WL 201575 (W.D.Mich.1989), to support its contention that a release agreement bars all future claims which could conceivably arise from an injury that precipitates a release/settlement agreement. The specific issue before the *Barney* court was whether a release agreement signed in conjunction with a workers' compensation redemption agreement can preclude unrelated claims. The court responded in the affirmative and held that the agreement at issue barred the plaintiff's age discrimination and ERISA actions brought by the plaintiff-employee. However, the court noted that the language of the Resignation and Waiver of Seniority Agreement at issue was sufficiently broad to cover the plaintiff's employment discrimination claims because the agreement covered all claims arising out of the employer-employee relationship.

The court finds that the broadly encompassing language present in the settlement agreement in *Barney* does not exist in the instant Agreement. Therefore, the court finds that the rationale employed in *Barney* is not applicable in the present cause.

Other cases binding on this court hold that state-created rights may not frustrate federal rights. For example, in *Hutchings v. United States Industries, Inc.,* 428 F.2d 303 (5th Cir.1970), the former Fifth Circuit held that an employee's invocation of remedies under a collective bargaining agreement did not preclude him from seeking a remedy in the federal courts under the Civil Rights Act.[6] In *Hutchings,* the plaintiff, an African–American male, sought to bring an action under the Civil Rights Act because he was subjected to discriminatory treatment based on his race. Hutchings brought his Title VII claim after he had filed a grievance and sought to benefit from a collective bargaining agreement. The court also noted that the determinations under a contract grievance arbitration process involves rights and remedies separate and distinct from those involved in proceeding under Title VII. *See also Thibodaux v. Atlantic Richfield Co.,* 580 F.2d 841, 847 (5th Cir.1978) *cert. denied* 442 U.S. 909, 99 S.Ct. 2820, 61 L.Ed.2d 274 (1979) (holding that the exclusive provision under the Louisiana Workers' Compensation Act could not be applied if to do so would conflict with maritime policy and undermine substantive rights afforded by federal maritime law).

In addition to finding that Brown neither expressly nor implicitly relinquished a claim to a future claim allegedly prompted by impermissible discrimination, the court finds that Plaintiff's Title VII claim was not actionable at the time Plaintiff signed the Agreement.

Brown and B & D executed the Agreement on November 22, 1991. Defendant states that Plaintiff desired to return to work on December 13, 1991, after being told on August 27, 1991, that his corrugated warehouse manager position was no longer available due to a reduction in force. Defendant stated in its brief that Langston told Brown that he had been "laid-off indefinitely." Langston's statement would not alert anyone that he or she has no chance of procuring a future assignment with B & D. Defendant also states that December 13, 1991 was the last time Brown requested work. The court finds that the earliest time at which Plaintiff could have filed an actionable discriminatory refusal to rehire/reassign suit was December 13, 1991. As a result, the court deems it beyond reason to suggest that Plaintiff could have filed an actionable Title VII claim prior to November 22, 1991.[7] Moreover, the Agreement addressed the injury sustained by Brown as a result of his employment, but Plaintiff's asserted Title VII claim pertains to the circumstances surrounding Defendants

---

**6.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**7.** Defendant places undue emphasis on Langston's statement that he informed Plaintiff in June, 1992 that he had been "laid-off indefinitely." Evidently, B & D is proffering the notion Plaintiff was somehow discharged at that moment. The court is not persuaded and finds that Plaintiff was not discharged, but merely laid-off when Langston made said statement.

refusal to reassign Plaintiff. These are two separate and distinct claims; therefore, the Agreement has no preclusive effect on Plaintiff's Title VII action.

### *Plaintiff's Motion for Summary Judgment*

In order for a plaintiff-employee to prevail on a Title VII claim he or she must show that the employer intentionally discriminated against him when making the employment decision(s) which gave rise to the suit. While direct proof of discriminatory intent may be preferred it is not a *sine qua non. International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). In cases of alleged discrimination not supported by direct proof, such as the present action, but rather by circumstantial evidence, the plaintiff-employee must first demonstrate a prima facie demonstration of unlawful discrimination. *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 1091, 67 L.Ed.2d 207 (1981). To demonstrate a prima facie case of unlawful discrimination, a Plaintiff must show that: (1) he belongs to a racial minority; (2) he was qualified for the position for which the defendant was taking applications; (3) despite the plaintiff's qualifications he was rejected; and (4) after such rejection, the defendant continued to seek applications from persons of the plaintiff's qualifications.[8] *Turnes v. AmSouth Bank,* 36 F.3d 1057, n. 7 (11th Cir.1994) (citing *Jones v. Firestone Tire and Rubber Co., Inc.,* 977 F.2d 527, 536 (11th Cir.1992), cert. denied, — U.S. —, 113 S.Ct. 2932, 124 L.Ed.2d 682 (1993)).

Once the plaintiff-employee satisfies his burden by demonstrating a prima facie case of discrimination, a presumption of impermissible discrimination arises. *St. Mary's Honor Center v. Hicks,* — U.S. —, —, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). The burden of production then shifts to the defendant-employer to articulate a legitimate nondiscriminatory reason for the adverse employment decision. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 248, 101 S.Ct. at 1089. Should a defendant-employer fail to meet its burden of production once a plaintiff-employee demonstrates prima facie discrimination, "the unrebutted presumption of discrimination stands." *Turnes,* 36 F.3d at 1061 (citing *Joshi v. Florida State University Health Center,* 763 F.2d 1227, 1236 (11th Cir.1985), cert. denied, 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 293 (1985).

The United States Eleventh Circuit Court of Appeals has determined that this intermediate burden is "exceedingly light." *Meeks .v. Computer Associates International,* 15 F.3d 1013, 1019 (11th Cir.1994) (quoting *Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1142 (11th Cir.1983)). To overcome the presumption of discrimination demonstrated by the plaintiff-employee, the defendant-employer "need only offer admissible evidence sufficient to raise a genuine issue of material fact as to whether it had a legitimate reason for not hiring the plaintiff." *Turnes,* 36 F.3d at 1061 (citing *Seaboard Coast Line Railroad Co.,* 767 F.2d 771, 774 (11th Cir.1985)).

In the case at bar, Plaintiff Brown contends that B &. D, through its agent(s), refused to permit him to return to work following an unrestricted release by his physician. Brown alleges that Defendant's decision not to allow his return to a position that he possessed the requisite qualifications was motivated by racial animus and sexual discrimination. In an affidavit, Plaintiff submitted a list of white males and females (black and white) who were hired to positions that Plaintiff possessed the requisite qualifications. Defendant does not refute the validity of the information contained therein. Instead, B & D relies on an alleged procedural flaw in Plaintiff's pleadings. Defendant contends that Plaintiff's judicial action is beyond the scope of his Right to Sue Letter and as a result this court may not properly assert jurisdiction.

In his claim with the EEOC, Plaintiff alleged that he was not allowed to return to

---

8. The court finds that Plaintiff must make a similar demonstration when constructing his prima facie case on sex discrimination.

work. Plaintiff contended that he had been discharged for improper reasons—racial and sexual discrimination. Defendant claims that Plaintiff's assertion in his EEOC charge was discriminatory discharge and now Plaintiff alleges that B & D discriminatorily refused to rehire him. Defendant states in its brief in opposition to Plaintiff's Motion for Summary Judgment that Plaintiff's "claim of discriminatory failure to rehire is distinct from a claim for discriminatory discharge."

The court has carefully read *Griffin v. Carlin*, 755 F.2d 1516 (11th Cir.1992)—the case B & D cites in support of its contention that Plaintiff's judicial action is outside the scope of EEOC's investigation and his Right to Sue letter. While defendant is correct in its assertion that the case stands for the proposition that a plaintiff may not institute a judicial action which lies beyond the scope of its EEOC claim, the *Griffin* court reiterated the explanation of the trial court regarding when a Title VII plaintiff will be deemed to have satisfied his administrative prerequisites and may validly prosecute a judicial action. The court noted that "the requirement of the exhaustion of administrative remedies is satisfied when the issues (a).... (b) might reasonably be expected to be considered in a diligent investigation of the those expressly raised issues...." *Griffin*, 755 F.2d at 1522.

The Court finds that the EEOC's investigation of Plaintiff's so-called discriminatory discharge claim would encompass the issues regarding Plaintiff's rehiring allegation in the judicial proceeding. The court predicates its finding in part on the fact that Plaintiff asserts no new facts and in part because Plaintiff's assertion of discriminatory rehiring amounts to nothing more than a misnomer as Plaintiff appears to have interchanged the terms.

The court finds that Plaintiff has constructed a prima facie case of sex and race

discrimination. Plaintiff has presented, and Defendant has not rebutted, a list of white males and females who were hired to positions in which the Plaintiff was qualified to assume. Although Defendant contends that Plaintiff did not seek further employment with B & D after December 13, 1991, the court finds that a jury could infer that Plaintiff was not recalled because of his race and/or sex. The court is aware that Brown did not seek further employment with B & D after December 13, 1991. However, Langston informed Plaintiff that he was laid-off and not terminated. Following December 13, 1991, B & D hired individuals to positions which Brown either previously held or was qualified to assume.

■ The burden of production now shifts to Defendant to adduce admissible evidence which would prompt an issue of fact in the minds of a reasonable jury. Defendant stated that its decision not to allow Plaintiff to return was not motivated by any prejudice or impermissible animus. Defendant offers evidence that the position Plaintiff held prior to his lay-off was no longer available due to a reduction in force caused by a lack of business.[9] In light of the point that the Eleventh Circuit has found that the defendant-employer's burden is not a heavy one, the court finds that Defendant raises a genuine issue of material fact; therefore, whether Defendant's proffered reason is pretextual should be determined by a jury.[10]

### Conclusion

Plaintiff's retaliatory discharge claim presents no genuine issue of material fact. Even when the evidence and inferences arising therefrom are construed in favor of Plaintiff, the balance does not tilt in favor of Plaintiff. Accordingly, the court finds that Defendant's Motion for Summary Judgment on Plaintiff's retaliatory discharge claim is due to be granted.

---

9. Wayne Langston Dep. p. 9 (Jan. 28, 1994).

10. The court notes that Brown and B & D appear to have diverging views as to which position Brown was eligible to take following his lay-off. B & D take a narrow approach and feels it should have considered Brown for the position he held prior to his injury. On the other hand,

Brown feels that he should have been considered for any and all positions for which he possessed the necessary qualifications. The court is convinced that a jury should determine whether Brown was not recalled because of his race and/or sex.

Because the court finds that Plaintiff did not expressly and volitionally waive his right to subsequently assert a Title VII claim when he signed the Agreement on November 22, 1991, the court finds that Defendant's Motion for Summary Judgment on Plaintiff's Title VII claim is due to be denied.

Also, the court finds that a genuine issue of material fact exists regarding whether Plaintiff was discriminatorily treated when B & D did not reassign him.

A judgment in accordance with this memorandum opinion shall be entered separately.

## ORDER

In accordance with the attached memorandum opinion and Rule 58 of the *Federal Rules of Civil Procedure,* it is CONSIDERED, ORDERED and ADJUDGED that Defendant B & D Plastics, Inc.'s Motion for Summary Judgment on Plaintiff's retaliatory discharge claim (arising under § 25–5–11.1 *Code of Alabama* (1975)) be and the same is hereby GRANTED. It is further

CONSIDERED, ORDERED and ADJUDGED that Defendant B & D Plastics, Inc.'s Motion for Summary Judgment on Plaintiff Wade Brown's Title VII claims be and the same is hereby DENIED. It is further

CONSIDERED, ORDERED and ADJUDGED that Plaintiff Wade Brown's Motion for Summary Judgment be and the same is hereby DENIED. It is further

CONSIDERED and ORDERED that each party bear its own expenses for costs herein incurred.