951 F.2d 1259
 57 Fair Empl.Prac.Cas. (BNA) 1456
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Velma E. NICHOLAS, Plaintiff-Appellant,
v.
DEPARTMENT OF HEALTH, STATE OF COLORADO, Defendant-Appellee.
 No. 91-1033.
 United States Court of Appeals, Tenth Circuit.
 Dec. 11, 1991.
 
 Before LOGAN, JOHN P. MOORE and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 LOGAN, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff appeals from an order of the district court granting defendant's motion for summary judgment. The district court held that plaintiff's signing of a settlement agreement constituted a waiver of the right to bring an action for age discrimination pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. We conclude that because plaintiff knowingly and voluntarily waived her right to assert any claim that was then before the state Personnel Board, the district court correctly granted summary judgment for defendant.
 
 
 3
 The facts in this case are undisputed. Plaintiff, who was fifty-seven and fifty-eight years old at the times she allegedly was discriminated against, began working for defendant as a clerk/typist in 1978. She subsequently was promoted to a Staff Assistant I based both on her certification as a nosologist[1] and the recommendation of her supervisor.
 
 
 4
 In January 1988, Jan Weiser, plaintiff's supervisor, allegedly stated that she intended to rid the defendant's Division of Epidemiology of the "little old gray-haired nosologist image." After apologizing for the comment to plaintiff, who has gray hair, Weiser asked plaintiff about her retirement plans. Weiser later changed plaintiff's responsibilities, increased her workload, and criticized her performance.
 
 
 5
 In May 1988, plaintiff filed a grievance alleging age discrimination with the Colorado Association of Public Employees.[2] Due to stress-related illness allegedly caused by Weiser, plaintiff took sick leave from May 25, 1988, to June 15, 1988.
 
 
 6
 Upon returning to work, plaintiff had chest pains after being criticized for her work. She was examined at Rose Medical Center, given medication, and referred to a clinic specializing in treatment of stress. Weiser, however, refused to authorize an evaluation by the clinic.
 
 
 7
 Thereafter, plaintiff took a five-week leave of absence. When she returned to work, plaintiff learned by memo that Weiser had assigned several of her duties to another nosologist. On July 25, 1988, Weiser issued a memo threatening plaintiff with nonpayment of wages. Plaintiff took another leave of absence. On July 26, 1988, she filed an age discrimination charge with the Equal Employment Opportunity Commission (EEOC).[3]
 
 
 8
 On September 15, 1988, defendant informed plaintiff that if she did not return to work by September 23, 1988, she would be discharged because she had used all of her sick leave and annual leave. Plaintiff requested leave without pay commencing September 23. The request was denied, and plaintiff was discharged effective September 26, 1988.
 
 
 9
 On September 29, 1988, plaintiff filed a second age discrimination charge with the EEOC.[4] On October 3, 1988, plaintiff amended her Personnel Board grievance to include three of the claims in her second EEOC charge (denial of short-term disability, denial of authorization for treatment for work-related stress, and denial of leave without pay) as well as a claim of continuing harassment. On November 15, 1988, she again amended her Personnel Board grievance to include a claim for termination.
 
 
 10
 On January 30, 1989, the parties executed a settlement agreement. The first sentence of the agreement states that the parties agree "in order to resolve the above matter." Plaintiff-Appellant's App. at 20. From the caption of the settlement agreement it is clear that "the above matter" refers to case No. 889-B-53 before the state Personnel Board. The agreement provided in part in paragraph nine that the parties "release, waive and discharge one another ... from any and all liability for all claims, damages, costs, rights and causes of action of any kind, resulting from or arising out of [Plaintiff's] termination which is the subject of [the state Personnel Board's] proceeding." Id. at 21. Although plaintiff's attorney drafted the other parts of the settlement agreement the defendant drafted and added the waiver provision in paragraph nine. Id. at 33 (affidavit of plaintiff's attorney, James R. Gilsdorf). On the same date, in a separate but obviously related document, the attorneys for the parties executed a stipulation to dismiss with prejudice case No. 889-B-53 before the state Personnel Board. See id. at 23.
 
 
 11
 In return for the release, defendant granted plaintiff retroactive leave without pay from September 26, 1988, to November 30, 1988. This action made plaintiff eligible for disability retirement benefits. The parties acknowledged in the agreement that they entered into the agreement knowingly and voluntarily without coercion or undue influence.
 
 
 12
 Subsequently, after investigating plaintiff's second charge,[5] the EEOC issued a determination that the evidence did not establish a violation of the ADEA. See id. at 51. Thereafter, plaintiff commenced this age discrimination action in district court within the applicable time limit. The allegations in the complaint were essentially identical to those in the amended Personnel Board grievance. Defendant moved to dismiss, alleging that plaintiff had knowingly and voluntarily waived her right to bring the action by signing the settlement agreement. The district court treated the motion to dismiss as a motion for summary judgment, and granted the motion. The court determined that plaintiff knowingly and voluntarily executed the settlement agreement and understood its scope. Additionally, the court determined that plaintiff waived all rights pertaining to age discrimination claims arising from both on-the-job treatment and termination.
 
 
 13
 * On appeal, plaintiff first argues that "summary judgment is an inappropriate remedy at this stage of the case." Plaintiff maintains that summary judgment is inappropriate because subjective factors such as intent and state of mind are at issue.
 
 
 14
 This court reviews a summary judgment order de novo, applying the legal standard used by the district court under Fed.R.Civ.P. 56(c). Wright v. Southwestern Bell Tel. Co., 925 F.2d 1288, 1291 (10th Cir.1991). Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard, this court examines the factual record and reasonable inferences in the record in the light most favorable to the opponent of summary judgment. Wright, 925 F.2d at 1292. This court does permit consideration of intent and state of mind issues on summary judgment. See, e.g., id. at 1291-93.
 
 II
 
 15
 Plaintiff next argues that the totality of the circumstances shows that she did not knowingly and voluntarily waive her right to sue under the ADEA. In Torrez v. Public Serv. Co. of N.M., Inc., 908 F.2d 687, 690 (10th Cir.1990) (per curiam), this court adopted the totality of the circumstances test for determining whether a waiver is valid. The totality of the circumstances test requires consideration of the following circumstances and conditions under which the release was signed:
 
 
 16
 "(1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether [p]laintiff knew or should have known [her] rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law."
 
 
 17
 Id. at 689-90 (quoting Cirillo v. Arco Chem. Co., 862 F.2d 448, 451 (3d Cir.1988)). Plaintiff most vigorously argues that factors (1), (4) and (7) support her position; we address these factors below. Although plaintiff does not have a college education the record indicates that she is intelligent. Nothing in the record suggests that plaintiff had an unusually short time to deliberate before signing the settlement agreement. Plaintiff was represented by counsel at all relevant times. Plaintiff concedes that the terms of the agreement were negotiated. Thus, factors (2), (3), (5) and (6) support the defendant's position that plaintiff's waiver was knowing and voluntary.
 
 
 18
 * The first consideration is the language of the release agreement. The district court found that the language of the release agreement was ambiguous, in that it did not specify whether it pertained only to the termination claim or whether it also pertained to the age discrimination claims pending before the EEOC. Because plaintiff knew the amended state Personnel Board grievance included age discrimination claims based on both treatment and termination, the district court concluded that plaintiff waived all claims.
 
 
 19
 Plaintiff agrees that the release language is not clear. She contends, however, that she did not settle all claims, because the release specifically releases only those claims arising from termination.
 
 
 20
 Our review of paragraph nine of the settlement agreement convinces us that although the first part of the paragraph is clear[6] the second part is ambiguous. The ambiguous language is "resulting from or arising out of [Plaintiff's] termination which is the subject of this proceeding." Plaintiff-Appellant's App. at 21. This language, viewed by itself, reasonably could be interpreted to cover only claims relating to termination and not on-the-job treatment. Alternatively, because plaintiff had been terminated at the time the settlement agreement was signed, it reasonably could be interpreted to cover those claims which were then before the Personnel Board, which included all of plaintiff's claims--both her discriminatory treatment claims and her discriminatory termination claims.
 
 
 21
 In this case, where the parties contemporaneously executed two related documents to effectuate their agreement--the settlement agreement itself and an accompanying stipulation--we believe it is appropriate to examine the clarity and specificity of both documents in considering the totality of the circumstances. By the stipulation, executed on the same day as the settlement agreement, the plaintiff by her attorney clearly, expressly, and unequivocally agreed to give up her right to pursue all matters then before the Personnel Board. As the record makes clear, before executing the settlement agreement and stipulation, plaintiff had twice amended her Personnel Board grievance to include both her claims of discriminatory treatment and her claims of discriminatory termination. Thus, we believe that the apparent ambiguity in the settlement agreement is resolved by the clear language of the stipulation.
 
 B
 
 22
 With regard to whether she knew or should have known of her rights upon execution of the release, plaintiff obviously knew that she had a right not to be discriminated against based on age, that she had filed age discrimination claims with both the Personnel Board and the EEOC, and that her claims in both forums were essentially identical and included charges of discriminatory treatment and termination. Plaintiff argues, however, that her attorney informed her the release did not waive her ADEA claims; plaintiff's attorney submitted an affidavit indicating that he believed the settlement did not cover the EEOC claims.
 
 
 23
 We note that the record contains no direct evidence, such as an affidavit by plaintiff herself, regarding what she knew her rights to be upon executing the settlement agreement. Nevertheless, we believe that a reasonable person represented by counsel should have known, at a minimum, that the settlement agreement and stipulation could be interpreted to waive all claims. If plaintiff intended to preserve her right to pursue some of her claims her attorney should have taken affirmative steps to clarify the language in the settlement agreement. Cf. Riley v. American Family Mut. Ins. Co., 881 F.2d 368, 374 (7th Cir.1989) ("The fact that plaintiff's counsel may have inaccurately conveyed the effect of the release or failed to draft language adequate to protect plaintiff's ... rights may be remedied through a malpractice action, but not through judicial interpretation of plaintiff's subjective intent.").
 
 C
 
 24
 The final factor is whether the consideration given in exchange for the release exceeds the value of the benefits to which plaintiff was already entitled. The district court determined that there was adequate consideration, because without the agreement plaintiff would have been required to prevail in a lawsuit in order to obtain disability retirement benefits.
 
 
 25
 Plaintiff argues the district court's reasoning is wrong, because the consideration she received is only a benefit to her under the circumstances of her termination. If it were not for defendant's wrongful conduct, plaintiff believes she would have been entitled to the benefits anyway.
 
 
 26
 The question of the adequacy of consideration turns not on whether the plaintiff received as much as she would have if she had litigated and won, but rather on whether she received something to which she was not already unquestionably entitled. Runyan v. NCR Corp., 573 F.Supp. 1454, 1460 (S.D.Ohio 1983), aff'd, 787 F.2d 1039 (6th Cir.) (en banc), cert. denied, 479 U.S. 850 (1986); see also O'Hare v. Global Natural Resources, Inc., 898 F.2d 1015, 1017 (5th Cir.1990). As the district court determined, without the agreement making plaintiff's termination effective on a later date, which made plaintiff eligible for disability retirement benefits, plaintiff would not have received any benefits unless she had pursued and ultimately prevailed on her discrimination claims. Thus, in return for signing the settlement agreement, plaintiff did receive a benefit to which she was not otherwise unquestionably entitled.
 
 D
 
 27
 Finally, although not one of the seven factors listed in Torrez, plaintiff maintains that another circumstance to consider is that she had no choice in signing the agreement because she was under economic and emotional strain. We find no merit to this argument. "[E]conomic pressure alone is insufficient to establish a claim of duress that would void an otherwise valid release." Cirillo, 862 F.2d at 452 n. 2. Plaintiff has failed to establish a wrongful act precluding her from exercising free will. See id. In addition, the agreement states that she entered into it without coercion or undue influence.
 
 
 28
 Based on the totality of the circumstances, we conclude that plaintiff knowingly and voluntarily executed the settlement agreement and stipulation. Furthermore, we conclude that she settled all of her age discrimination claims then pending before the EEOC and the state Personnel Board.
 
 III
 
 29
 Plaintiff's final argument is that legislative intent opposing waiver of ADEA claims dictates that defendant is not entitled to judgment as a matter of law. To support her argument, plaintiff cites the Older Workers Benefit Protection Act, Pub.L. No. 101-433, § 201, 104 Stat. 978, 983 (1990) (codified at 29 U.S.C. § 626(f)), which was signed into law after plaintiff executed the settlement agreement. Although the law states that it is not to apply to waivers signed before enactment, id. § 202, plaintiff maintains that Congress never intended ADEA waivers to be lawful. Plaintiff also suggests waiver is improper unless it is supervised by the EEOC.
 
 
 30
 Under the law in effect at the time the settlement agreement was signed, private waivers of ADEA claims were not precluded. See Coventry v. United States Steel Corp., 856 F.2d 514, 522 n. 8 (3d Cir.1988); Runyan v. National Cash Register Corp., 787 F.2d 1039, 1040 (6th Cir.) (en banc), cert. denied, 479 U.S. 850 (1986); see also Bormann v. AT & T Communications, Inc., 875 F.2d 399, 401 (2d Cir.) (private settlement of claims is not inconsistent with ADEA, even though ADEA incorporates by reference enforcement provisions of Fair Labor Standards Act and private waiver of claims under that Act are precluded), cert. denied, 493 U.S. 924 (1989). We conclude plaintiff's argument has no merit.
 
 
 31
 The judgment of the United States District Court for the District of Colorado is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Nosology is the systematic classification of diseases
 
 
 [2]
 Plaintiff's grievance alleged, inter alia: (1) Weiser made the "gray-haired nosologist" comment; (2) plaintiff took this to mean that Weiser intended to get rid of her; (3) after apologizing, Weiser remained hostile and increased plaintiff's workload and gave less time for completion; and (4) Weiser's actions caused plaintiff great work-related stress
 
 
 [3]
 Plaintiff's first EEOC charge alleged, inter alia: (1) Weiser made the "gray-haired nosologist" comment; (2) Weiser continued to harass plaintiff; (3) plaintiff had received increased work assignments with less time to complete them; (4) plaintiff was required to sign in and out of the office while a younger male employee was not; (5) despite being the most senior nosologist plaintiff did not receive a window office; and (6) although plaintiff requested a needed reference book another employee received a new chair
 
 
 [4]
 Plaintiff's second EEOC charge alleged, inter alia: (1) plaintiff was denied authorization for treatment for work-related stress; (2) plaintiff was denied leave without pay; (3) plaintiff was denied short-term disability; (4) plaintiff was discharged because of her age and in retaliation for having filed a previous charge of discrimination
 
 
 [5]
 The EEOC determination in the record addressed the allegations in plaintiff's second charge, see supra note 4, but did not address those in her first charge
 
 
 [6]
 The following language is clear: "The parties mutually release, waive and discharge one another ... from any and all liability for all claims, damages, costs, rights and causes of action of any kind...." Plaintiff-Appellant's App. at 21