David TORREZ, Plaintiff–Appellant,

v.

**PUBLIC SERVICE COMPANY OF NEW MEXICO, INC.,** Defendant–Appellee.

No. 89–2103.

United States Court of Appeals, Tenth Circuit.

July 20, 1990.

Earl Mettler of Mettler & LeCuyer, P.C., Albuquerque, N.M., for plaintiff-appellant.

Robert C. Conklin and Margaret E. Davidson of Keleher & McLeod, P.A., Albuquerque, N.M., for defendant-appellee.

Before LOGAN, JONES,* and SEYMOUR, Circuit Judges.

---

* Honorable Nathaniel R. Jones, Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

**688**

PER CURIAM.

Plaintiff David Torrez appeals from an order of the district court granting summary judgment for defendant Public Service Company of New Mexico (PNM) and holding that Torrez's signing of a release at the time of his employment termination constituted a knowing and voluntary waiver of his right to bring an employment discrimination action pursuant to 42 U.S.C. §§ 1981, 2000c–5 (1982). Torrez challenges the district court's consideration of only the language of the release, and not the totality of the circumstances and conditions under which the release was signed. We agree that the district court should have considered the totality of the circumstances, and conclude that it erred in granting summary judgment for PNM.[1]

The following facts are undisputed. Torrez was employed by PNM for eight years and eleven months as a journeyman mechanic, working foreman, and finally a foreman in the maintenance department of the power plant. PNM notified Torrez on March 31, 1986, that his position was being impacted as part of a downsizing of the company's work force due to economic problems. The notification letter also informed Torrez he had until April 30, 1986, to select early retirement, voluntary separation, or involuntary separation. PNM later held an orientation for all affected employees to discuss the separation packages, and Torrez attended.

Because Torrez had been employed by PNM for less than nine and one-half years, he did not qualify for early retirement. His election therefore was limited to either voluntary or involuntary separation. Both of these packages provided for full salary until July 31, 1986, plus one week of salary for each year of service, career counseling, and health, life, and dental insurance coverage until November 30, 1986. The primary difference between the two packages was that the voluntary package also provided for vesting of retirement benefits for an employee having five years of service with defendant.

After requesting and receiving an estimate of his retirement benefits under a voluntary separation, on the last possible day Torrez chose the voluntary separation package to obtain the additional retirement benefits. At that time, he signed a release which provided:

"I, David F. Torrez, hereby release and discharge PNM, its officers, supervisors, agents, employees and all other persons or entities, for any and all claims which I have or might have, arising out of or related to my employment or resignation or termination from employment by or from PNM. I also acknowledge full settlement and satisfaction of such claims and I further understand that the consideration given by PNM is not to be construed as any admission of liability by PNM or its officers, supervisors, agents, employees or any other persons or entities being released.

The terms of this release are contractual and all terms of this release are expressed in this document. I have read this release and fully understand it."

Subsequently, Torrez commenced this racial/national origin employment discrimination lawsuit. PNM moved for summary judgment, asserting that Torrez had knowingly and voluntarily waived his right to bring the action by signing the release at the time of his employment termination. In granting summary judgment for PNM, the district court focused its analysis on the language of the release. The court held that the clear and unambiguous language of the release was evidence of Torrez's intent to waive the discrimination claims. Refusing to consider Torrez's subjective intent, the court stated that "[a] subjective intention not to waive civil rights claims is not sufficient to preserve those claims in the face of unambiguous language in a release agreement." District Court Opinion at 8. Finally, the court noted that Torrez failed to provide any evi-

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

dence that PNM did not intend the release to apply to the full extent suggested by its wording.

On appeal, Torrez argues he did not knowingly and voluntarily waive his right to bring this action by signing the release. Torrez contends that his intent and understanding must be assessed at trial and should not have been decided by summary judgment. Additionally, he asserts that the totality of the circumstances supports a finding that there was no knowing and voluntary waiver. We review a summary judgment order *de novo*, and apply the same legal standard used by the district court under Rule 56(c) of the Federal Rules of Civil Procedure. *See Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Summary judgment should be granted only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, we shall examine "the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir.1990).

█ Both Title VII and section 1981 employment discrimination claims may be waived by agreement, *see Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1352–53 (11th Cir.1983), but the waiver of such claims must be knowing and voluntary, *see Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 1021 n. 15, 39 L.Ed.2d 147 (1974); *Trujillo v. Colorado*, 649 F.2d 823, 827 (10th Cir.1981); *see also Shaheen v. B.F. Goodrich Co.*, 873 F.2d 105, 107 (6th Cir.1989) (waivers knowingly and voluntarily made enforced absent typical exceptions for fraud, duress, lack of consideration, or mutual mistake). Waiv-

ers of federal remedial rights, however, are not lightly to be inferred. *Watkins v. Scott Paper Co.*, 530 F.2d 1159, 1172 (5th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 163, 50 L.Ed.2d 139 (1976).

In considering whether a general release was knowing and voluntary, some circuits purport to apply ordinary contract principles and focus primarily on the clarity of language in the release. *See Pilon v. University of Minn.*, 710 F.2d 466 (8th Cir.1983); *Runyan v. National Cash Register Corp.*, 787 F.2d 1039, 1044 n. 10 (6th Cir.) (en banc) (waiver of ADEA rights), *cert. denied*, 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986).[2] The majority of circuits, however, explicitly look beyond the contract language and consider all relevant factors in assessing a plaintiff's knowledge and the voluntariness of the waiver. *See Stroman v. West Coast Grocery Co.*, 884 F.2d 458, 462 (9th Cir.1989); *Riley v. American Family Mut. Ins. Co.*, 881 F.2d 368, 373–74 (7th Cir.1989); *Bormann v. A T & T Communications, Inc.*, 875 F.2d 399, 403 (2d Cir.) (waiver of ADEA rights), *cert. denied*, —— U.S. ——, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989); *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir.1988) (waiver of ADEA rights); *Coventry v. United States Steel Corp.*, 856 F.2d 514, 522–23 (3d Cir.1988) (waiver of ADEA rights); *Rogers v. General Elec. Co.*, 781 F.2d 452, 456 (5th Cir.1986). In so doing, these courts have considered the following circumstances and conditions under which the release was signed:

"(1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether [p]laintiff knew or should have known his rights upon execution of

---

**2.** While the courts in both *Pilon* and *Runyan* stated that they were only applying general contract principles to determine the sufficiency of the waivers, a reading of those courts' opinions in their "entirety reflects the fact that the court[s] considered other factors." *Conventry v. U.S. Steel Corp.*, 856 F.2d 514, 522 n. 9 (3rd Cir.1988). Although the court in *Pilon* primarily considered the contract language, for example, it emphasized that the plaintiff had been

represented by counsel and had not used a standard form agreement, but had negotiated the specific language utilized in the release. 710 F.2d at 468. Similarly, the *Runyan* court observed that the plaintiff there was not a low-paid worker with "little education and little understanding of [his] legal rights.... Rather, [the plaintiff was] a well-paid, well-educated labor lawyer." 787 F.2d at 1044.

the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law."

*Cirillo*, 862 F.2d at 451.

■ In our view, the totality of the circumstances approach is the better one. While evaluation of the language of the contract is necessary to determine the validity of the waiver of discrimination claims, our inquiry cannot end there. Especially "[i]n light of the strong policy concerns to eradicate discrimination in employment, a review of the totality of the circumstances, considerate of the particular individual who has executed the release, is also necessary." *Coventry*, 856 F.2d at 522–23; *see also Watkins*, 530 F.2d at 1172 ("[t]o assume that, notwithstanding strong evidence to the contrary, a signature implies understanding is to allow a rule of contract law to play too salient a part in the administration of a remedial civil rights statute").

■ In assessing the totality of the circumstances in this case, we conclude there are material issues of fact precluding summary judgment. The language of the release, although clear and unambiguous, failed to mention specifically waiver of employment discrimination claims. *See Cirillo*, 862 F.2d at 450 (employee advised of equal employment laws, encouraged to consult employee relations representative, and release specified employment discrimination claims); *Rogers*, 781 F.2d at 453–54 (release specifically mentioned Title VII). As we have stated above, unambiguous language cannot derail our analysis of whether the waiver was made knowingly and voluntarily. Here, Torrez has stated that it did not occur to him when he signed the release that he might be waiving possible discrimination claims. He testified he believed he was releasing claims arising

out of the voluntary termination and the benefits package he was accepting. This is not an unreasonable conclusion for a high school educated employee, unfamiliar with the law.

Moreover, Torrez neither consulted with an attorney nor received encouragement from defendant to do so before he signed the release. *See Cirillo*, 862 F.2d at 450 (employer suggested employee should consult attorney regarding release); *Coventry*, 856 F.2d at 525 & n. 13 (lack of advice of attorney relevant); *Rogers*, 781 F.2d at 456 (employee advised by employer to consult attorney). Torrez did not have the opportunity to negotiate the terms of the release, which was a standard form. When Torrez chose the voluntary separation package, he was required to sign the release. The choice between the two separation packages was a "Hobson's choice," *see Coventry*, 856 F.2d at 524, because Torrez had to opt between a nearly-certain layoff with no retirement benefits or obtaining the future retirement benefits available only if he signed the release. He testified at his deposition that he signed the release in order to save his retirement benefits, even though he felt he had been unjustly terminated.[3]

In sum, Torrez was in the unenviable position of having to sign the release or lose his retirement benefits. He had a high school education, the release did not specifically mention release of employment discrimination claims, and Torrez did not consult with an attorney nor have an opportunity to negotiate the terms of the release. He testified he viewed the release as releasing only those claims arising out of the termination plan. Under the totality of the circumstances, the evidence before the district court presented a material question of fact as to whether Torrez knowingly and voluntarily signed the release.

The judgment of the United States District Court for the District of New Mexico is VACATED, and the action is REMAND-

---

**3.** This choice indicates there may have been duress in the form of unfair economic pressure placed on plaintiff to sign the release. *See Coventry*, 856 F.2d at 524 n. 12.

ED for further proceedings in accordance with this opinion.