Kenneth W. WRIGHT,
Plaintiff–Appellant,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, a Corporation,
Defendant–Appellee.

No. 89–6400.

United States Court of Appeals,
Tenth Circuit.

Feb. 13, 1991.

---

Kenneth W. Wright, Midwest City, Okl., pro se.

Nancy L. Coats, Southwestern Bell Telephone Co., Oklahoma City, Okl., on the brief, for defendant-appellee.

Before LOGAN, SEYMOUR, and TACHA, Circuit Judges.

TACHA, Circuit Judge.

This is an appeal from the district court's dismissal of plaintiff-appellant Kenneth Wright's claim for relief against Southwestern Bell (SWB) under the Employee Retirement Income Security Act of 1974 (ERISA or Act), 29 U.S.C. §§ 1132, 1140–41, and a grant of summary judgment on Wright's claim under Title VII, 42 U.S.C. §§ 1981, 1988, 2000e *et seq.*[1] On appeal, Wright argues the district court erred by: (1) finding the ERISA claim is barred by the statute of limitations and (2) granting SWB's motion for summary judgment on the Title VII claim because Wright knowingly and voluntarily released all claims against his former employer. We affirm the summary judgment decision and reverse and remand the ERISA claim for further proceedings in accordance with this opinion.

Kenneth Wright was employed by SWB from February 19, 1972 until May 23, 1985. During that time, he was a member of the Communications Workers of America (CWA) and was covered by the collective bargaining agreement between the union and SWB. The union contract provides sick leave and short- and long-term disability benefits. From 1981 to 1985, Wright drew sick leave and short-term disability on several occasions. Wright testified he requested long-term disability benefits during the early part of 1985. SWB informed him he was not eligible for long-term disability benefits without the company doctor's recommendation. Wright claims he was given the choice of either returning to work or being terminated. After exhausting his vacation benefits, Wright returned to work in February 1985.

In April 1985, Wright was suspended for misconduct. On May 23, 1985, Wright was discharged for "misconduct, poor quality of work, and for refusing to do a job."

Wright twice filed written charges of discrimination against SWB with the Oklahoma Human Rights Commission and the Equal Employment Opportunity Commission (EEOC). He filed the first charge on the day he was suspended and the second on the day he was terminated. In both

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

complaints, Wright claimed SWB had discriminated against him based on his race.

In accordance with the collective bargaining agreement, Wright presented his claims against SWB for discrimination in a grievance hearing. Before the grievance procedure was complete, the parties negotiated a settlement whereby SWB agreed to change the reason for Wright's dismissal from "misconduct" to "unsatisfactory service." SWB also agreed to pay Wright $13,902.

On November 1, 1985 SWB issued a check for $9,513 ($13,902 less federal and state withholdings) to Wright. The following statement was typed on the back of the check above the line for endorsement:

### RELEASE

By endorsing and/or negotiating this instrument, employee covenants not to sue or arbitrate, and releases from all claims and/or demands of whatever kind or nature, the Southwestern Bell Telephone Co. and the Communications Workers of America.

Wright endorsed the check and deposited it in his bank account in early November 1985.

In September 1988, the EEOC concluded SWB had not engaged in any discriminatory employment practices. The EEOC issued Wright a right to sue letter, advising him he had until December 28, 1988 to file any Title VII claims in federal district court. Wright filed a complaint on December 28, 1988, alleging violations of ERISA and Title VII. The district court dismissed Wright's ERISA claim and granted SWB's motion for summary judgment on the Title VII claim. The court held Wright's ERISA claim was barred by the statute of limitations. It found that under section 1113 of ERISA, an action must be commenced within three years of the earliest date on which the plaintiff had actual knowledge of the breach or violation. The court granted SWB's motion for summary judgment based on a finding that Wright had released "all claims ... for relief under Title VII, and 42 U.S.C. sections 1981, 1988, and

2000(e) [2000e] *et seq.*, and all common law claims for breach of contract."

 Wright contends the district court did not apply the proper statute of limitations when dismissing the ERISA claim. We review a district court's ruling on the applicability of a statute of limitations de novo. *Pierce County Hotel Employees & Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450*, 827 F.2d 1324, 1328 (9th Cir.1987). We hold the district court erred when it concluded that section 1113 was applicable to an action brought under section 1132. Section 1113 is, in fact, only applicable to actions arising out of violations of the portion of the Act addressing fiduciary responsibilities, 29 U.S.C. §§ 1101–12. *See Wyoming Laborers Health & Welfare Plan v. Morgen & Oswood Constr. Co.*, 850 F.2d 613, 618 n. 8 (10th Cir.1988). Wright's claim does not involve fiduciary responsibilities regarding financial solvency or accountability as contemplated by section 1113. The focus of his complaint is on SWB's *administration* of the plan's benefits, specifically, the denial of his long-term disability benefits.

ERISA plan administration and enforcement are governed by sections 1131 to 1145 of the Act. Wright's claim was brought under section 1132, which authorizes private civil enforcement actions. This provision allows a plan beneficiary or participant to bring a civil action: (1) for the relief provided in section 1132(c) of the Act, § 1132(a)(1)(A); (2) to recover benefits due under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan, § 1132(a)(1)(B); (3) to obtain appropriate relief under section 1109 of the Act, § 1132(a)(2); (4) to enjoin any act or practice that violates any portion of the Act concerning plan administration and enforcement or to obtain other appropriate equitable relief to redress such violations or enforce the Act's provisions or the terms of the plan, § 1132(a)(3); and (5) to obtain appropriate relief for violations of section 1025(c) of the Act, § 1132(a)(4).

Section 1132 does not contain a statute of limitations. A recent decision of this cir-

cuit, *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197 (10th Cir. 1990), addresses the appropriate limitations period for actions brought under this provision. In a private civil action brought pursuant to section 1132, Held asserted his former employer had violated section 1140, which proscribes interference with protected rights. *Id.* at 1198. We noted in *Held* that because section 1132 does not contain a statute of limitations, we first must determine whether an analogous state statute or a statute of limitations from another portion of ERISA, such as section 1113, should apply. *Id.* at 1203 (citing *Reed v. United Transp. Union*, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989)).

To resolve this question, we turned to another recent decision in this circuit, *Wyoming Laborers Health & Welfare Plan v. Morgen & Oswood Constr. Co.*, 850 F.2d 613 (10th Cir.1988). *Morgen & Oswood* addressed the question of what limitations period is applicable to an action under section 1132(a)(3) by trustees of employee benefit pensions and insurance funds against an employer for delinquent contributions. In *Morgen & Oswood*, we had considered several arguably applicable statutes of limitations, including the limitations period in section 1113 of ERISA. We concluded in *Morgen & Oswood* that "the Wyoming ten-year statute of limitations for actions based on written contracts is the statute of limitations 'most analogous' to the Trustees' ERISA action." *See Held*, 912 F.2d at 1201 (quoting *Morgen & Oswood*, 850 F.2d at 612). Following *Morgen & Oswood*, we decided in *Held* to apply an analogous state statute rather than an ERISA statute of limitations to ERISA claims for which there was no express limitation period. *Held*, 912 F.2d at 1201–02.

This court in *Held* next sought to determine the most analogous state statute. As a preliminary matter, the court characterized the appellant's claim. It found that the appellant had two distinct causes of action. His first action was brought under section 1132(a)(3) for declaratory and injunctive relief from his former employer's alleged violation of section 1140. Plaintiff

also had claimed under section 1132(a)(1)(B) for benefits due under the plan.

After concluding that the appellant had two distinct claims for relief, the court next determined the most analogous state statute for each of these claims. *Id.* at 1204. We first concluded the limitation period for state employment discrimination actions should apply to the appellant's claim for injunctive relief under section 1132(a)(3) for his former employer's alleged violation of section 1140. *Id.* at 1205. The court then held the statute of limitations for claims on a written contract should be applied to the section 1132(a)(1)(B) claim for benefits due under the plan. *Id.* at 1206–07.

To determine the applicable statute of limitations in the present case, we first must characterize Wright's claim. Although Wright's amended complaint claims his action is based on sections 1132, 1140, and 1141, he does not ask for the declaratory and injunctive relief available under section 1132(a)(3). A review of the record reveals that Wright has never asked for declaratory or injunctive relief. In his prayer for relief, he seeks recovery of short- and long-term disability benefits that he claims were wrongfully denied. Such recovery is authorized under section 1132(a)(1)(B). Based on *Held*, we conclude Oklahoma's five-year statute of limitations on written contracts, Okla.Stat.Ann. tit. 12, § 95, applies to this claim. We hold the ERISA claim is not time-barred because Wright filed his claim long before the proper statute of limitations had run.

Wright also contends the release on the back of the check that he endorsed did not constitute a knowing and voluntary waiver of his right to sue SWB for racial discrimination under Title VII. We review a summary judgment order de novo and apply the same legal standard used by the district court under Rule 56(c) of the Federal Rules of Civil Procedure. *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Under Rule 56(c), summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.

Civ.P. 56(c). In applying this standard, we examine "the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir.1990).

Title VII claims may be waived by agreement, *Torrez v. Public Serv. Co.*, 908 F.2d 687, 689 (10th Cir.1990), but the waiver must be knowing and voluntary, *Alexander v. Gardener–Denver Co.*, 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 1021 n. 15, 39 L.Ed.2d 147 (1974); *Torrez*, 908 F.2d at 689. After the district court entered its order denying summary judgment, this court decided *Torrez*. In *Torrez*, we held the totality of the circumstances under which a release is signed determines whether it is knowing and voluntary. We pointed out that courts have considered the following factors in evaluating whether the totality of the circumstances indicates a release is knowing and voluntary:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Id.* at 689–90 (quoting *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir.1988)).

Evaluating the totality of the circumstances in this case, we are convinced Wright's waiver was knowing and voluntary based on the factors listed in *Torrez*. The record indicates the language on the check clearly and specifically released "all claims and/or demands of whatever kind or nature." Because this language was labeled "RELEASE" and typewritten on the back of the check directly above the place for endorsement, a reasonable person should have seen the release when endorsing the check. Because all of Wright's claims against SWB were based on discrimination, we are convinced no reasonable person reading this language could have believed he was releasing one but not all the discrimination claims. Based on the constructive knowledge standard of *Torrez*, we find no issue of material fact remaining on whether Wright should have known he was waiving all his related discrimination claims pending with the EEOC when he endorsed the check.

Additionally, we fail to find any genuine issues of fact based on other factors enumerated in *Torrez*. There is no indication in the record, nor does Wright allege, his education and business experience are below average. In fact, Wright's letter of complaint to the EEOC and his pro se brief demonstrate a notable degree of sophistication regarding discrimination and retaliation claims in the employment context. Further, the record indicates Wright was represented by union representatives throughout the negotiation process and had sufficient opportunity to negotiate the terms of the settlement. The record also indicates Wright endorsed the check at his prerogative and SWB in no way limited the amount of time he had to deliberate about the release before signing. Finally, the record shows SWB gave Wright a check for $13,902 less deductions and changed the basis of his dismissal from "misconduct" to "unsatisfactory service." This consideration clearly exceeds the benefits to which Wright was entitled by contract or law at the time he signed the release of his pending claims against SWB.

The fact situation we faced in *Torrez* is distinguishable from the present case. In *Torrez* we held that language stating "I ... hereby release and discharge ... any or all claims I have *or might have*" raised a material question of fact about whether the plaintiff knowingly and voluntarily prospectively released a racial discrimination claim he commenced after signing the waiver. 908 F.2d at 688 (emphasis added). Unlike Torrez, however, Wright signed the release after he already had filed with the

EEOC alleging discrimination by SWB. Both SWB and Wright knew of these claims when the release was executed. In contrast, the release language in *Torrez* purported to cover all future claims including claims of which neither party was aware when executing the release.

We consider the present case more similar to *Stroman v. West Coast Grocery Co.*, 884 F.2d 458, 461 (9th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 151, 112 L.Ed.2d 117 (1990). In *Stroman*, the Ninth Circuit held an intent to waive all discrimination claims can be inferred from the fact the plaintiff signed a release waiving "any and all claims" against his employer after he had filed employment discrimination claims with the EEOC. *Id.* Thus, depending on the rest of the circumstances, a release waiving "all claims" against an employer may be sufficiently clear and specific to release pending claims when a plaintiff already has filed discrimination claims as Wright had done. Considering the record in light of the factors outlined in *Torrez*, we hold as a matter of law that no material issue of fact remains concerning Wright's knowing and voluntary waiver of the pending discrimination claims brought under Title VII.

■ Finally, Wright contends the release on the back of the check could not have constituted a knowing and voluntary waiver of his right to sue SWB under ERISA. We agree. The release was signed in November 1985. Because Wright did not assert his ERISA claim until this lawsuit was filed in December 1988, it was impossible for either SWB or Wright to know of this claim when the release was signed. Although we agree the language of the release is sufficiently clear to release the pending discrimination claims, *see Torrez*, 908 F.2d at 689; *Stroman*, 884 F.2d at 461, we hold it is insufficient to release future claims against SWB about which neither party knew. We therefore AFFIRM the district court's grant of summary judgment in favor of SWB, REVERSE the district court's dismissal of Wright's ERISA claim,

and REMAND for further proceedings consistent with this opinion.