Sue R. ANDERSON, Plaintiff,

v.

LIFECO SERVICES CORPORATION, a Texas Corporation, d/b/a Lifeco Travel Services, Corp. and American Express Company, a New York Corporation, Defendants.

Civ. A. No. 93–B–1900.

United States District Court, D. Colorado.

March 28, 1995.

Kenneth A. DeLay, Carrie A. Rodgers, Miller, DeLay & Crabb, P.C., Westminster, CO, for plaintiff.

Elaine H. Turner, Holland & Hart, Colorado Springs, CO, Gregory A. Eurich, Holland & Hart, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Presently before me are cross-motions for partial summary judgment filed by defendants Lifeco Services Corporation and American Express Company (collectively Lifeco), and plaintiff Sue R. Anderson (Anderson). Lifeco moves for summary judgment on Anderson's claims for age discrimination in violation of the Age Discrimination and Employment Act, as amended by the Older Workers Benefits Protection Act (OWBPA), 29 U.S.C. §§ 621–634, Pub.L. 101–433, and the Colorado Anti–Discrimination Act, C.R.S. § 24–34–402(1), and breach of contract and negligent misrepresentation based on alleged promises of a permanent job absent any negative performance evaluations. Lifeco also moves for summary judgment on Anderson's claims for outrageous conduct, emotional distress and exemplary damages to the extent that these causes of action arise out of the employment relationship before the execution of the Agreement and Waiver.

Anderson's motion for summary judgment seeks a determination that the Agreement and Waiver is invalid as a matter of law for failure to comply with § 201 of the OWBPA, 29 U.S.C. § 626(f), or was rescinded. The motions are fully briefed and orally argued. For the reasons set forth in this order, I grant Lifeco's motion for partial summary judgment and deny Anderson's motion for partial summary judgment. These motions do not relate to Anderson's separate claim for commissions which she allegedly earned while employed by Lifeco.

## I.

In 1987, Anderson was employed by Lifeco as a vice president of sales and marketing. Lifeco sells travel services to large corporate clients. In addition to selling travel services, Anderson negotiated override contracts with United Airlines. In 1991, she was promoted to international vice president of business development. Complaint, ¶ 11. Anderson earned $65,000 a year and was paid a commission based on her corporate accounts.

American Express purchased Lifeco in December 1991. On April 10, 1992, Anderson was terminated. Complaint, ¶ 16. The stated reason for her termination was a reduction in force. Complaint, ¶ 17. In connection with the termination, Lifeco offered her an enhanced separation package in consideration for her execution of the Agreement and Waiver. Defendant's Motion for Summary Judgment (Dfts' Motion), Exhibit B. The Agreement and Waiver (the release) released Lifeco from claims and causes of action arising from the employment relationship before the execution date. The release specifically incorporated claims arising under Title VII, the Age Discrimination in Employment Act, claims under federal, state or local civil rights or labor laws, contract and tort claims. Dfts' Motion, Exhibit C.

The letter accompanying the termination package informed Anderson that she had 45 days to review the release. The third paragraph of the release states that "Ms. Anderson further acknowledges that she was advised to review the Agreement and Release and Exhibit A with an attorney of her choice." Id. She was given seven days to revoke the release after signing it. Id.

The separation package offered to Anderson included a four week notification period, twenty weeks severance pay and outplacement services. This offer was in lieu of the standard separation package which included a two week notification period and

four weeks severance pay. The package included the names, ages, and titles of those employees affected by the cut-backs as well as the names, ages, and titles of those employees unaffected. Dfts' Motion, Exhibit B.

On April 30, 1992, eighteen days after Anderson received her notification of termination, she executed the release subject to the condition that Lifeco send her a letter stating that "Lifeco/American Express has agreed that they will continue to work towards resolution of those issues outlined in my letter of March 15, 1992." Dfts' Motion, Exhibit C. Dan Ehle of Lifeco sent a letter to Anderson on May 7, 1992 confirming that Lifeco would work towards resolution of the commissions issue. Dfts' Motion, Exhibit D. Anderson received $28,216.88 in severance pay. Dfts' Motion, Exhibit E.

On November 17, 1992, Bill Diehl of Lifeco sent Anderson a memorandum stating the amount Lifeco believed it owed her for outstanding commissions for 1992. The memorandum required her to sign a release acknowledging that the calculations were correct and represented the full amount owed her before she could receive the commissions payment. Dfts' Motion, Exhibit F. Anderson never signed the form and the commissions issue remains unresolved.

On December 11, 1992, Anderson's attorney sent a letter to Lifeco purporting to rescind the release based on Lifeco's alleged breach of the release for failure to "work cooperatively and in good faith with Ms. Anderson to ensure she was paid all commissions she was due as a result of her many years of excellent service to Lifeco, and to pay those commissions." Plaintiff's Memorandum in Opposition and Motion for Partial Summary Judgment (Pltf's Motion), Exhibit M. Lifeco agrees that Anderson's claim for commissions was excluded from the release. Lifeco argues there is no release term requiring payment of the commissions and, therefore, Anderson is not entitled to rescission.

## II.

Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552-53; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992).

Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. If a movant establishes entitlement to judgment as a matter of law given uncontroverted, operative facts contained in the documentary evidence, summary judgment will lie. *Mares,* 971 F.2d at 494.

## III.

The resolution of both motions turns on the validity of the April 30, 1992 release. Lifeco contends that, as a matter of law, it is entitled to summary judgment on all claims arising before the execution of the release, excluding the commissions claim. Anderson asserts that, as a matter of law, the release was never effective because it violated § 626(f) of the ADEA. 29 U.S.C. § 626(f). In the alternative, she asserts that the release was rescinded by letter dated December 11, 1992. I conclude in light of the undisputed facts that, as a matter of law, the release is valid and enforceable.

## A.

■ To be effective, a waiver of an employee's claim under the ADEA must be "knowing and voluntary." 29 U.S.C. § 626(f)(1). The minimum criteria required to constitute a valid waiver are set forth in § 626(f). The relevant criteria are:

(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;

(B) the waiver specifically refers to rights or claims arising under this chapter;

(C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F)(ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;

(H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to—

(i) any class, unit, or group of individuals covered by such program, any eli-

gibility factors for such program, and any time limits applicable to such program; and

(ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

Anderson asserts that the release is invalid because it does not satisfy these requirements. On the facts, about which there can be no genuine dispute, and, as a matter of law, I disagree.

The release is a two page document easily understood by a person of average intelligence. The overall purpose and effect of the document is clear. The waiver language specifically refers to claims and rights arising under Title VII and the Age Discrimination and Employment Act. It expressly excludes claims Anderson may have against Lifeco after the execution date. Furthermore, the release advises Anderson to review the document with an attorney of her choice. This, she chose not to do.

As consideration for signing the release, Anderson received an additional two weeks notice payments and sixteen weeks severance pay over the normal termination package. She was given forty-five days to review the release and seven days to revoke the release in writing after the execution date. The termination package included the names and ages of other employees who were terminated as part of the reduction in force and the names and ages of those employees unaffected by the reduction. Thus, the release conformed with the minimum requirements of § 626(f).

■ In *Torrez v. Public Service Company of New Mexico, Inc.*, 908 F.2d 687, 690 (10th Cir.1990) the Tenth Circuit held that a court must look to the "totality of the circumstances" to determine if the release is "knowing and voluntary." Although *Torrez* was decided before the 1990 amendments to the ADEA, which included § 626(f), I will consider the "totality of the circumstances" because § 626(f) states that a "waiver may not be considered knowing and voluntary unless at a

minimum" it meets the requirements of § 626(f)(A)–(H). Consequently, compliance with § 626(f) means only that the release is not insufficient per se. In addition to the threshold factors now codified in § 626(f), the *Torrez* court considered the plaintiff's education and business experience, whether plaintiff knew or should have known her rights upon execution of the release, and whether there was an opportunity for negotiation of the terms of the agreement. Thus, while the § 626(f) factors tend to focus objectively on the terms of the release, the *Torrez* factors tend to require a subjective analysis of the employee's understanding of the consequences of the release and whether the terms of the release were subject to negotiation.

Anderson is a sophisticated business person with approximately forty years of work related experience. Defendant's Exhibit A, Anderson Affidavit, p. 39. The release specifically stated that she released all . . .

> claims, causes of action, and demands of any kind, whether known or unknown . . . including . . . those arising under Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967, as amended . . . which . . . may arise from or are or may be related to her employment with Releasees or the termination of that employment with Releasees, up to and including the date of this Agreement and Release. The Company and Ms. Anderson agree that, by entering into this Agreement and Release, Ms. Anderson does not waive claims that may arise after the date this Agreement and Release is executed.

In addition, the release advised Anderson to obtain a lawyer of her choice. Based on Anderson's sophistication level and the clear language of the release, I conclude that when she executed the release, Anderson had at least constructive if not actual knowledge of the rights she waived. *See Wright v. Southwestern Bell Telephone Company*, 925 F.2d 1288, 1292 (10th Cir.1991).

It is undisputed that Anderson had the opportunity to and did negotiate the terms of the release. She reviewed the release for eighteen days before executing it and made its effectiveness contingent upon Lifeco sending her a letter acknowledging her outstanding claim for commissions thereby preserving that claim. Thus, Anderson understood that if she did not reserve her rights she would waive them under the release. I conclude that Anderson knowingly, intelligently and voluntarily executed the release.

## B.

■ Anderson contends, however, that she rescinded the release by letter dated December 11, 1992. She argues the rescission was based on Lifeco's failure to "work cooperatively and in good faith with Ms. Anderson to ensure she was paid all the commissions she was due as a result of her many years of excellent service to Lifeco, and to pay those commissions." Pltf's Motion, Exhibit M. Under Colorado law, a party may be entitled to rescission if "there is a substantial breach [of contract], that the injury caused is irreparable, or that damages would be inadequate, difficult, or impossible to assess." *Wall v. Foster Petroleum Corporation*, 791 P.2d 1148, 1150 (Colo.App.1989). A contract cannot be rescinded unilaterally.

The operative language of the April 30, 1992 letter provides that "Lifeco/American Express has agreed that they will continue to work towards resolution of those issues outlined in my letter of March 15, 1992." There is no dispute that Anderson preserved her commissions claim. However, Anderson asserts that this language obligated Lifeco to make a good faith effort to resolve the commissions dispute, the breach of which constitutes a breach of the release. I disagree.

Under the April 30, 1992 letter Lifeco was to "work towards the resolution" of the commissions issue. This language is similar to the agreement in *Griffin v. Griffin*, 699 P.2d 407, 409 (Colo.1985), where the parties agreed to "consult concerning their child's education and jointly select his school." The Colorado Supreme Court held that the agreement was unenforceable because it was an agreement to negotiate and reach a resolution sometime in the future. Because courts cannot force parties to reach an agreement, no remedy was available. *Id.*

The April 30, 1992 letter merely creates an agreement to work towards an agreement. This is essentially a commitment to negotiate in the future which is unenforceable. *See Mahon v. Harst,* 738 P.2d 1190, 1195 (Colo. App.1987). Anderson's April 30, 1992 letter required, as a condition to her release of claims against Lifeco, preservation of her separate claim to commissions. By letter of May 7, 1992 Lifeco agreed to except the commissions claim from the release. This constituted additional consideration for the release. Anderson got that for which she bargained. Lifeco's commitment to "work towards" resolutions of the commissions issue gave rise to no enforceable agreement to settle the commissions claim. Because there is no agreement to breach, there is no right of rescission.

Accordingly it is ORDERED that:

1) Lifeco's motion for partial summary judgment on Anderson's First, Second, Third and Fourth claims is granted; and

2) To the extent they are employment related actions arising before the execution of the release, Lifeco's motion for partial summary judgment on Anderson's Ninth, Tenth, and Eleventh claims is granted; and

3) Anderson's motion for partial summary judgment is denied.