**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 29, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

EDMUND V. MADRID,

Plaintiff-Appellant,

v.

PHELPS DODGE CORPORATION;
and CHINO MINES COMPANY,

Defendants-Appellees.

No. 06-2106
(D.C. No. CIV-04-138 MV/ACT)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN** and **BRORBY**, Circuit Judges, and **BROWN**,[**] District Judge.

Plaintiff Edmund V. Madrid appeals from the district court's grant of

summary judgment in favor of defendants. We exercise jurisdiction under

28 U.S.C. § 1291 and affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]     The Honorable Wesley E. Brown, Senior District Judge, District of Kansas, sitting by designation.

## I. Background

From 1965 until 2002, Mr. Madrid worked at defendant Chino Mines Company in Hurley, New Mexico. He was promoted to a supervisory position in 1972 and continued in that capacity for the remainder of his employment there. Defendant Phelps Dodge Corporation owns and operates Chino Mines. In January 2002, Phelps Dodge implemented a reduction in force at Chino, which included Mr. Madrid, and offered an early-retirement benefit and severance package to employees whose position had been eliminated (the 70/80 plan). The company disagreed with Mr. Madrid that he was eligible for the 70/80 plan because, in the company's view, his position had not been eliminated and his lay-off was temporary. Instead, Phelps Dodge and Chino Mines offered a different package to Mr. Madrid in February 2002 consisting of enhanced unemployment benefits and two retirement options. In order to receive that package, Mr. Madrid was required to sign an Agreement and General Release (Release) that included a waiver of his claims against both companies, including claims arising out of his employment or its termination, and a convenant not to sue.

Mr. Madrid, who is Hispanic, refused to sign the Release and accept the package "because he did not want to jeopardize his right and privilege to bring suit against [defendants] for what he believed to be a discriminatory reduction-in-force and severance process." Aplt. Opening Br. at 7. He filed an EEOC charge in May 2002 claiming that the refusal to offer the 70/80 plan to him

was because he is Hispanic. The EEOC eventually issued him a right-to-sue letter in September 2003.

Meanwhile, by letter dated November 8, 2002, John Fenn, President of Chino Mines, informed Mr. Madrid that he was now eligible for the 70/80 package because his job had finally been eliminated. The letter advised Mr. Madrid that he needed to schedule an appointment between November 18 and November 27 to return to Chino Mines in order to be reinstated for one day and receive his retirement package, which would include the Release that he would have to sign. If those dates did not work for him, he was to call and see if Chino Mines could select another date. Mr. Madrid also received a letter dated November 19, 2002, which indicates that it was accompanied by a copy of the Release. The letter asked him to "return the completed forms no later than November 27, 2002." Aplt. App. at 312.

Mr. Madrid went to Chino Mines on November 26, met with a human resources employee, signed the five-page Release, and has been receiving benefits under the 70/80 plan since December 2002. The Release he signed is five pages long,[1] but the most relevant provision is paragraph nine, which reads in pertinent part:

---

[1] The record also contains a copy of the Release bearing only Mr. Madrid's signature that is dated November 19, 2002, *see* Aplee. App. at 12, indicating that he received it at least as early as that date. That copy is not signed by a representative of either defendant.

Employee agrees not to bring any suit or claim against the Company or any of its related entities or individuals with respect to any matter, including those related to his employment with the Company or his separation from that employment. Therefore, Employee . . . forever releases the Company . . . from any and all claims, demands, liabilities, obligations, suits, charges, actions, and causes of action, whether known or unknown, past or present, accrued or not accrued, as of the date Employee signs this Agreement. The items released include, but are not limited to, matters relating to or arising out of his employment or separation from employment. Some examples of items released are claims under federal, state, or local laws, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, [and] the Employee Retirement Income Security Act of 1974 . . . . This provision, of course, does not affect Employee's rights, if any, to benefits under the Company's benefit plans in accordance with the terms of those plans, or to make a complaint to any state or federal agency with respect to issues related to his employment with the Company.

Id. at 309.

Mr. Madrid initiated the action underlying this appeal in December 2003, several months after receiving the EEOC's right-to-sue letter and more than a year after signing the Release. In his second amended complaint, the operative pleading in this case, he alleged that defendants engaged in a variety of discriminatory and retaliatory acts, including certain job actions and their refusal to give him the 70/80 plan. He also alleged that the discrimination was because he is Hispanic and the retaliation was because he had complained of unlawful treatment. He asserted claims under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 (ERISA), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII). He also brought state-law

claims for negligent misrepresentation, intentional misrepresentation, and breach of contract. The parties stipulated to the dismissal of the state-law claims, and defendants filed two motions for summary judgment, one on the ERISA claim and one on the Title VII claim, each of which incorporated an earlier motion for summary judgment that was based on the Release. The district court granted the motions on the ground that the Release was valid and dismissed the claims and action with prejudice. This appeal followed.

## II. Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Where, as here, a defendant seeks summary judgment on the basis of an affirmative defense, the defendant

> must demonstrate that no disputed material fact exists regarding the affirmative defense asserted. If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact. If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law.

*Hutchinson*, 105 F.3d at 564 (citations omitted). "In determining whether the defendant is entitled to summary judgment, we view all facts and reasonable inferences therefrom in the light most favorable to the plaintiff." *Id.*

### III. Analysis

ERISA and Title VII claims may be waived by agreement but the waiver must be knowing and voluntary. *See Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1291-93 (10th Cir. 1991) (holding that plaintiff knowingly and voluntarily waived Title VII claims but not future ERISA claims). In determining whether a release is knowing and voluntary, a district court must consider the totality of the circumstances, including seven factors:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether [p]laintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Torrez v. Pub. Serv. Co. of N.M.*, 908 F.2d 687, 689-90 (10th Cir. 1990) (per curiam) (quotation omitted; alteration in original).

Mr. Madrid raises four issues on appeal. First, he argues that he raised a genuine issue of material fact concerning whether he knowingly and voluntarily signed the Release. Second, he contends that the district court misallocated the

-6-

burdens of proof and production that are established under 29 U.S.C. § 626(f), which was promulgated by the Older Workers Benefit Protection Act, Pub. L. No. 101-433, Title II, § 201, 104 Stat. 978, 983-84 (1990) (OWBPA). Third, he claims that the district court did not afford him the benefit of all reasonable inferences from the evidence and overlooked certain evidence. And fourth he argues that the district court did not properly apply the waiver requirements of the OWBPA to the provisions of the Release.

The district court conducted a thorough and detailed analysis of the record and concluded that each of the seven *Torrez* factors were clearly met. The court further concluded that Mr. Madrid had not raised a genuine issue of material fact as to any of those factors. We agree with the district court's analysis and need not repeat it here. Although we are not persuaded otherwise by any of Mr. Madrid's appellate arguments concerning the *Torrez* factors, including his assertion that the district court drew unreasonable inferences against him from evidence that the court considered, we will address his contention that the district court overlooked certain evidence. We also will explain why the provisions of the OWBPA do not apply here and why the district court did not place the burden of proof on Mr. Madrid.

## A. The district court did not improperly overlook evidence

Mr. Madrid argues that the district court overlooked the deposition testimony of David Brooks, director of human resources at Phelps Dodge, and

Deborah Ore, a Phelps Dodge human resources clerk. According to Mr. Madrid, Mr. Brooks and Ms. Ore stated that they could not understand the Release, and he contends that as the company's own human resources employees, their inability to understand the Release supports his allegation that he did not understand it. But Mr. Madrid mischaracterizes their testimony. Mr. Brooks stated that he had never seen the Release Mr. Madrid had signed and that he was not qualified to interpret the language because it was drafted by the company's legal department. Aplt. App. at 314, Brooks Dep. at 74:16-22, 77:9-19. Ms. Ore stated that if an employee had questions about the meaning of the terms and provisions of the Release, she would point the employee to the human resources manager because she was not qualified to explain the meaning of those terms and provisions. Aplt. App. at 316, Ore Dep. at 6:2-24. The testimony of Mr. Brooks and Ms. Ore does not show that they could not understand the Release, but only that they were not the ones to interpret the language on behalf of Phelps Dodge. Their testimony, therefore, does not assist Mr. Madrid in establishing a genuine issue of fact as to whether or not he understood or should have understood the language of the Release. Thus, the district court properly omitted discussion of their testimony from its decision.

**B. The OWBPA and the burden of proof**

Mr. Madrid argues that the district court erred by not applying two provisions of the OWBPA. The first provides that "[a]n individual may not waive

any right or claim under *this chapter* unless the waiver is knowing and voluntary[,]" 29 U.S.C. § 626(f)(1) (emphasis added), and sets forth certain minimum requirements for determining whether a waiver is knowing and voluntary, *see id.* § 626(f)(1)(A)-(H). The reference to "this chapter" in § 626(f)(1) means Chapter 14 of Title 29 of the United States Code, which pertains to the Age Discrimination in Employment Act of 1967 (ADEA). The plain language of the statute, therefore, indicates that the minimum requirements for a valid waiver set forth in § 626(f)(1)(A)-(H) apply only to ADEA claims, not to other federal claims such as ERISA or Title VII. Consequently, the fact that a waiver is invalid as to an ADEA claim because it does not meet the minimum requirements established by § 626(f)(1)(A)-(H) does not affect its validity as to other types of claims. *See Tung v. Texaco, Inc.*, 150 F.3d 206, 208-09 (2d Cir. 1998) (holding waiver was knowing and voluntary as to Title VII claim but not, under the OWBPA, as to ADEA claim). Mr. Madrid did not assert any ADEA claims. The provisions of § 626(f)(1)(A)-(H), therefore, were not applicable to the district court's analysis of the validity of the Release as to Mr. Madrid's ERISA and Title VII claims. None of the cases Mr. Madrid cites on page nineteen of his appellate brief support his contrary view.

The second provision of the OWBPA on which Mr. Madrid bases an argument provides, in relevant part, that "[i]n any dispute that may arise over whether any of the requirements of [§ 626(f)(1)(A)-(H)] . . . have been met, the

party asserting the validity of a waiver shall have the burden of proving in a court of competent jurisdiction that a waiver was knowing and voluntary pursuant to [§ 626(f)(1)]." 29 U.S.C. § 626(f)(3). Mr. Madrid contends that the district court contravened this provision by placing the burden on him to prove that the Release was invalid.

Like § 626(f)(1), however, § 626(f)(3) is inapplicable to the validity of the Release as to Mr. Madrid's ERISA and Title VII claims. But this does not mean that Mr. Madrid had the burden of proof. As we pointed out above, defendants bore the ultimate burden of proof because they sought summary judgment based on an affirmative defense. *See Hutchinson*, 105 F.3d at 564; *see also Torrez*, 908 F.2d at 690 (vacating grant of summary judgment in favor of employer on release issue because employee had established genuine issue of material fact). Despite the fact that the district court did not explicitly state the controlling summary judgment standard or analyze each party's burden sequentially, it is clear that the court did not place the burden of proof on Mr. Madrid. Rather, the district court discussed the evidence that affirmatively supported defendants' burden to show that there were no disputed issues of material fact on any of the *Torrez* factors and explained why Mr. Madrid's contrary arguments did not demonstrate the existence of a material fact.

The examples Mr. Madrid quotes from the district court's decision do not lead to a different conclusion. Addressing an alleged ambiguity in the language

-10-

of the Release that preserved his right to bring claims to an agency, Mr. Madrid quotes the court's statement that "Plaintiff has not convinced the Court that the right to file an agency complaint suggests an exception to Plaintiff's agreement not to bring any suit or claim against the Company." *Id.* at 276 (quotation omitted). Although the use of the word "convinced" suggests a requirement of proof, the entirety of the court's discussion indicates that the court found there to be no disputable issue that the two types of claims were separate and that the language of the release, as distinct from Mr. Madrid's understanding of it, was clear and specific.

The other quotes to which Mr. Madrid points provide no assistance to him. In considering Mr. Madrid's argument that he did not understand the Release because of his education and lack of legal training, the district court stated that "[t]here is no indication in the record, and Plaintiff does not allege, that his education and business experience are below average." *Id.* This language is taken nearly verbatim from one of this circuit's cases concerning a knowing and voluntary release. *See Wright*, 925 F.2d at 1292 ("There is no indication in the record, and Wright does not allege, his education and business experience are below average."). The reference to "below average" education and business experience in *Wright* does not describe a burden of proof for an employee opposing a motion for summary judgment that is based on a waiver agreement. Instead, it is merely a means of stating that there is nothing in the employee's

background suggesting a limited ability to understand the Release. Here, the district court also described Mr. Madrid's educational background, which included a high school diploma and one-and-one-half years at Western New Mexico University, as well as certification classes he had passed for his job at Chino Mines and the fact that he held the position of Contract Supervisor when he was laid off. Aplt. App. at 276. It is clear that the district court determined that Mr. Madrid's ability to understand the Release, like the plaintiff's in *Wright*, was not unduly limited by his educational and business experience, and that the court did require Mr. Madrid to prove that that experience was below average.

We further disagree with Mr. Madrid that the district court required him to show that defendants had set an "absolute deadline" for signing the Release in order to show that he had insufficient time to consider and sign the Release. The district court simply characterized the two letters he received in November 2002 as not setting an "absolute deadline." *See id.* at 277. The important evidence the district court considered was Mr. Madrid's testimony that he knew he had forty-five days to consider and sign the Release. *See id.* at 276. The district court even sustained an objection to a leading question that was asserted during Mr. Madrid's deposition that elicited contrary testimony. *Id.* at 277. Thus, the district court did not require Mr. Madrid to prove that defendants had set an absolute deadline in order to avoid summary judgment but instead concluded that

his testimony clearly showed his understanding that he had time to think over his decision to sign the Release if he wanted to do so.

Mr. Madrid's final point on the burden of proof concerns the OWBPA, which we have concluded is not relevant in this case. Therefore, we do not address that point.

## IV. Conclusion

The judgment of the district court is AFFIRMED.

Entered for the Court

Wesley E. Brown
District Judge